cial Term held in Suffolk county; the defendant being a public officer having his office in the county of Albany.

Section 2068 of the Code of Civil Procedure provides:

"Except where special provision therefor is otherwise made in this article, a writ of mandamus can be granted only at a special term of the supreme court held within the judicial district embracing the county, wherein an issue of fact, joined upon an alternative writ of mandamus is triable, as prescribed in this article."

Suffolk county being in the second district, and Albany county in the third district, it seems that the question as to whether or not the application is made in the proper county is determinable by ascertaining in what county the issue of fact would be triable. Section 2084 of the Code of Civil Procedure contains this provision:

"An issue of fact, joined upon an alternative writ of mandamus, granted at a special term of the supreme court, is triable in the county, wherein it is alleged in the writ, that the material facts took place, unless the court directs it to be tried elsewhere."

It seems to me that the material fact herein is the relator's removal from office. That took place at Albany. It is true that upon the trial other facts which took place at other places might be proved, but they would be material only as bearing upon the main question as to whether or not the relator's removal was legal. The question of fact herein under this provision of the Code would be properly triable in Albany county. This is in harmony with the provision in relation to the trial of an action against a public officer found in section 983, subd. 2, Code Civ. Proc. It is also supported by authority. People ex rel. Shook v. Kilburn, 28 Misc. Rep. 679, 59 N. Y. Supp. 1052.

The preliminary objection to the hearing of the application upon the merits in the second district is therefore sustained without costs, and without prejudice to a new proceeding in the proper county where the merits may be determined.

Ordered accordingly.

---

(129 App. Div. 538.)

CONSOLIDATED NAT. BANK OF NEW YORK v. FIRST NAT. BANK OF MIDDLETOWN.

(Supreme Court, Appellate Division, Second Department.   December 30, 1908.)

1. BANKS AND BANKING (§ 141*)—CHECKS—PAYMENT—IRREVOCABILITY.
    When defendant bank paid a check drawn on it, marking it paid, crediting it to the indorsee's agent's account, and charging it to the drawer's account, the transaction was irrevocably closed; defendant becoming indebted to the agent and being powerless to subsequently charge the check back.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 347; Dec. Dig. § 141.*]

2. JUDGMENT (§ 585*)—CONCLUSIVENESS.
    The drawee of a check having credited the indorsee's agent's account with the amount thereof and charged it against the drawer's account, before the drawer's assignee sued to have ownership of the drawer's

deposit declared to be in him, judgment for the assignee in that suit did not preclude the indorsee from suing the drawee for the amount of the check, which after being so credited was charged back; the effect of the judgment merely contemplating that all money to the drawer's account should be paid to his assignee.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 585.*]  .

3. BANKS AND BANKING (§ 138*)—CHECKS—PAYMENT—RIGHTS OF INDORSEE.
   Where a check was marked paid and credited by the drawee to an indorsee's agent's account and was afterwards charged back, the indorsee did not waive any of its rights as against the drawee by failing to appear or answer in a subsequent suit by the drawer's assignee to have ownership of the deposit declared to be in him, where the only allegation in the complaint touching the check was that the indorsee claimed an interest in the deposit, and where no notice was given in the complaint that the validity or fairness of the transaction resulting in payment of the check would be attacked.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 138.*]

Appeal from Trial Term, Orange County.

Action by the Consolidated National Bank of New York against the First National Bank of Middletown, N. Y.   From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH and MILLER, JJ.

Abram F. Servin, for appellant.

Henry W. Wiggins, for respondent.

HOOKER, J.   While the facts in this case are a little unusual, I see no difficulty in the application of one or two very plain principles of law which have been long established.

The facts are not in dispute.   Davis & Co., a corporation, on the 8th day of December, 1904, drew its check for $150 in New York City upon the defendant bank to its own order, indorsed it, and obtained the money thereon from the plaintiff bank.   The plaintiff forwarded the check for collection to its Albany correspondent, the Albany Trust Company, which forwarded it to the defendant, by which it was received on Saturday, December 10th.   On Monday, December 12th, Davis & Co. had on deposit with the defendant bank to its credit $473. On that day the defendant bank marked the check paid, and charged the amount thereof against the account of Davis & Co., and credited it on their books to the account of the Albany Trust Company, which was conceded to be plaintiff's agent.   Some time on that day, whether before or after the marking of the check paid and its entry in the books matters not, one Seaman called at the defendant bank and advised the officers thereof that the money to the credit of Davis & Co. in that bank belonged to him, and he forbade the payment of any checks drawn upon that account.   The next day the defendant bank canceled the paid mark upon the check, and made other entries upon its books, crediting the amount of the check to the account of Davis & Co. and charging the account of the Albany Trust Company therewith.   The check was then protested and returned to the plaintiff.   A few days later, Seaman commenced an action in equity against this defendant,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this plaintiff, Davis & Co., and the trustee in bankruptcy of Davis & Co., which had meanwhile been adjudged bankrupt; the purpose of the action being to declare the ownership of the $473 on deposit in the defendant bank to the credit of Davis & Co. to be in the plaintiff Seaman. This plaintiff, the Consolidated National Bank of New York, was served in that action, but did not appear or answer, and judgment was ultimately taken therein by default, adjudging that the sum of $473 specified in the complaint, and in possession of the defendant, the First National Bank, was the sole property of Seaman, and that it be paid by the First National Bank of Middletown to Seaman.

The check, when presented to the defendant, was paid by its acceptance by the defendant as valid, by marking the same paid, crediting the amount to the account of the plaintiff, and charging it against the account of Davis & Company. As a matter of law, that closed the transaction without power of revocation. The defendant bank had become the debtor of the plaintiff's agent to the extent of the amount of the credit given, which was the amount of the check. In Oddie v. Nat. City Bank of New York, 45 N. Y. 735, 741, 6 Am. Rep. 160, the court says:

"Here the plaintiffs clearly put in the check as a deposit, and the defendants as clearly received it as such, and credited the plaintiff with it. The credit on the deposit ticket was as significant an act, evincing the consent of the defendants to the payment of it, as if made upon the passbook of the plaintiffs, and entered upon the books of the bank. Financial business is transacted at banks in large amounts, with great rapidity, but according to definite and certain rules, which are well understood and acted upon by those engaged in that business. Very little is said, but very much is understood, and there is an absence of all formalities which tend to embarrass the facility of doing the business. In determining the legal effect of such transactions, we must apply the same rules applicable to all contracts and business affairs, and effectuate and carry out the intention of the parties, to be gathered from their acts and declarations, and the accustomed and understood course of the particular business. Applying these rules, there can be no doubt but there was an express demand on one side, and consent on the other, that this check should be placed to the credit of the plaintiffs as a deposit. The legal effect of the transaction was precisely the same as though the money had been first paid to the plaintiffs, and then deposited. When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in Pratt v. Foote, 9 N. Y. 463; but if it accepts such a check and pays it, either by delivering the currency, or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine. In the case of a deposit, the bank becomes at once the debtor of the depositor, and the title of the deposit passes to the bank. The bank always has the means of knowing the state of the account of the drawer, and, if it elects to pay the paper, it voluntarily takes upon itself the risk of securing it out of the drawer's account or otherwise. If there has ever been any doubt upon this point, there should be none hereafter."

In legal effect there was just as much a payment of the check of $150. by the defendant to the plaintiff through its Albany correspondent, as though a messenger from the plaintiff bank had presented the check at the teller's window of the defendant bank and received therefor the currency. Inasmuch as this conduct took place before the commencement of the Seaman action and before judgment therein,

that action cannot, of course, be a bar to the maintenance of this. Suppose that an officer of the plaintiff bank had presented this check personally to the defendant bank on the 12th of September and received therefor $150 in currency. The transaction was perfectly valid. Davis & Co. had nominally to its credit with the defendant bank a sum sufficient to pay the check; and it cannot be supposed that Seaman, in the action which he brought, could have reached this sum of $150 in the hands of the plaintiff bank after such actual payment in cash. The defendant is in no better position, as the facts are. If there had been, as there was in law, actual payment of this check by the defendant on the 12th of September, the Seaman action could not rightfully reach the $150 of such payment; if the defendant has paid out the full sum of $473 to Seaman, it has, of course, done so at its peril, and is unfortunately the loser. The adjudication in the Seaman case that $473 should be paid by the First National Bank of Middletown to him merely contemplated that all of the moneys with the First National Bank to the credit of Davis & Co. should be paid to Seaman. According to the legal interpretation of the acts in connection with the presentment of the $150 check, there was not $473 to the credit of Davis & Co. with the defendant bank, but, rather, that sum less $150, which had been paid out of that account upon the 12th day of September. The failure of the plaintiff in this case to answer in the Seaman case deprived it of none of its rights which theretofore had become vested. The only allegation in the complaint of the Seaman case touching the transaction of the payment of this check was:

"Consolidated National Bank of New York claims to have an interest in the said fund remaining on deposit to the extent of at least one hundred and fifty dollars ($150)."

The Consolidated National Bank had no such interest in any fund, for there was in strict law no fund. By reason of the deposit with the First National Bank of Middletown it was indebted to Davis & Co. By reason of the acquiescence in the demand of the plaintiff by its Albany correspondent, the demand being based upon the presentment of the $150 check, the First National Bank of Middletown became indebted to Davis & Co. for $150 less, and became indebted to the agent of the plaintiff for $150 more. No allegation of the complaint in the Seaman case attacks the good faith of the payment of the check, or of the transfer of credit, which amounted to the same thing, and the plaintiff was entirely justified in failing to appear or answer in the Seaman case without waiving any of its rights, for no notice was given in the complaint that the validity or fairness of the transaction which resulted in the payment of the $150 check would be attacked.

The judgment ought therefore to be affirmed, with costs. All concur.