Leonard H. Sandler, J.
In this action by Valley Bank of Nevada, successor to the Bank of Las Vegas (Las Vegas), tn recover a certain sum of money paid to the Bank of Commerce (Commerce) allegedly under a mistake of fact or law, both parties have moved for summary judgment.
The case concerns a check for $4,000, drawn on Commerce, dated July 17, 1969, payable to the order of M & B Investment Company, Inc., a Las Vegas corporation, and purportedly signed by Commerce’s customer, Matthew Carpelow. On or about July 19, the check was deposited with Las Vegas, and then forwarded by Las Vegas for collection through its correspondent bank in New York City, Morgan Guaranty Trust Company (Morgan).
*196 Commerce paid the check on or about July 22, and charged Carpelow’s account. Las Vegas received a credit from Morgan in the sum of $4,000, and in turn credited the account of M & R Investment Company, Inc. in that amount.
Thereafter, on or about August 7, Carpelow informed Commerce that his signature on the check was forged, and signed an affidavit of forgery. Commerce credited Carpelow’s account for $4,000, and by letter dated August 7, made claim on Las Vegas for reimbursement through Morgan.
Following receipt of the original documents on or about August 22, 1969, Las Vegas debited the account of M & R for $4,000, informed Morgan of that action and that Morgan’s account had been credited in that amount in connection with reimbursement to Commerce. On August 28,1969, Commerce received Morgan’s treasurer’s check in the sum of $4,000 together with a transmittal memorandum that the check was given as reimbursement for the amount of the original forged check.
At this point there appears the only area of possible factual disagreement in the papers before me. Commerce asserts that it received no further communication in the matter until it received Las Vegas’ letter, dated December 28, 1970 and signed by plaintiff’s senior vice-president and cashier, in which a formal claim for reimbursement was made.
Las Vegas states that M & R had refused the charge back, apparently on August 27, according to the December 28, 1970 letter, and that Las Vegas promptly sought an offset credit from Morgan. A delay followed because of a fire at Las Vegas in which its reconciliation records were destroyed, and Las Vegas did not learn the item was still outstanding until mid-April, 1970, when the work of reconstructing the accounts was completed. Thereafter, on April 15, 1970 and again on July 22, 1970, reconciliation tracers were sent to Morgan relating to outstanding items, one of which was the $4,000 credit, to which there was no response. Eventually, in a telephone conversation on August 6, 1970, Morgan took the position that Las Vegas was bound by its action of August 22, 1969.
The circumstance that Commerce had heard nothing further of the matter after it received the Morgan check until the letter of December 28,1970 setting forth the Las Vegas claim, suggests that Morgan had not seen fit to transmit to Commerce the various communications it had received from Las Vegas in the intervening period.
A natural starting point for analysis is the obvious fact that Las Vegas was under no legal obligation whatever to reimburse *197 Commerce for the $4,000, or to charge its customer’s account. The rule of law — first set forth in Price v. Neal (5 Burr. 1354 [1762]), widely followed thereafter, and firmly accepted in the Uniform Commercial Code — is explicit that a drawee bank that pays an instrument on which the signature of the drawer is forged cannot recover back its payment from a collecting bank that acted in good faith. (Uniform Commercial Code, § 3-418; see, also, Uniform Commercial Code, § 3-417, subd. [1], par. [b]; § 4^207, subd. [1], par. [b].) The defense of forgery interposed by Commerce to this action is thus patently without merit.
Since Las Vegas was under no legal obligation to reimburse Commerce, the critical question presented is why Las Vegas in fact did so.
It is surely improbable that Las Vegas, although aware that it had no legal obligation to Commerce, graciously agreed to make a $4,000 gift to that institution, or alternatively decided to embroil itself in an unnecessary litigation with its own customer on behalf of Commerce. Accordingly, the further defense of waiver, with the necessary premise that Las Vegas knowingly surrendered its rights, is entirely inapplicable.
Nor does there seem any substance to the further argument that Las Vegas was merely settling a disputed claim and should be bound by its settlement. It is rare that disputed claims are settled by the prompt payment of the precise amount demanded, particularly when the paying party is a commercial institution that is under no obligation to pay anything.
Unquestionably, as contended by Las Vegas, its action of August 22,1969 returning the money to Commerce was a mistake. What is not clear from the papers is the precise nature of the mistake, but the following seems to me to cover the realistic possibilities.
First, and the more probable explanation of what occurred, Las Vegas may have returned the money under the mistaken though natural assumption that its depositor would not object to being charged with funds represented by a check that was in fact forged.
No doubt, this presents a conceptual problem with the traditional rules governing recovery for payments made under a mistake of fact, which commonly specify that the mistake must be with regard to an existing and material fact. (44 N. Y. Jur., Payments, § 97.) However the pronounced tendency has been to give a flexible interpretation in this area where the interests of justice clearly require, and I see no reason why a mistake *198 with regard to the intention of a depositor does not qualify as a mistake of fact. (441ST. Y. Jur., Payment, § 97.)'
The basic rule was clearly formulated long ago by the Court of Appeals in National Bank of Commerce in N. Y. v. National Mechanics Banking Assn. of N. Y. (55 N. Y. 211, 213 [1873]): ‘ ‘ It is now settled * * # that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.” (See, also, Manufacturers Trust Co. v. Diamond, 17 Misc 2d 909 [App. Term, 1st Dept., 1959].)
No such change of position occurred in this case or could have occurred since Commerce’s liability to its own depositor for paying on the forged check was clear and acknowledged.
Second, Las Vegas may have acted under the erroneous legal understanding that it was obligated to reimburse Commerce.
Although it is hard to understand how a banking institution could have been in error on so well-established a legal rule, the possibility cannot be discounted entirely, particularly in view of the astonishing advice to Las Vegas from Morgan that the Commerce request was “ a valid claim.”
CPLR 3005 explicitly provides: ‘ ‘ When relief against a mistake is sought in an action * * * relief shall not be denied merely because the mistake is one of law rather than one of fact.”
I am aware that the note accompanying section 112-f (see 1942 Report of N. Y. Law Rev. Comm., p. 29) of the Civil Practice Act (the original formulation of this section) stated that it was not designed to give the same scope to mistakes of law that obtained with regard to mistakes of fact. However, I see nothing in the language of the section, its history or subsequent construction that would deny its applicability to a mistake of law with regard to a rule so long established and universally accepted as that involved in this case. (See 3 Weinstein-KornMiller, N. Y. Civ. Prae., pars. 3005.03, 3005.04.)
In short, I am satisfied that Las Vegas returned money to Commerce that it was not legally required to do under a mistake of fact and law, and that under all the realistic possibilities as to the nature of the mistake, Las Vegas is entitled to recover.
Approaching the issue in a somewhat different way, the underlying reality in this case was most clearly suggested in the affidavit submitted on behalf of Commerce by an assistant vice-president who said: “ On the basis of my personal experi *199 ence, I am able to inform-the Court that requests for reimbursement of forged checks initially honored are not uncommon and are frequently granted by the collecting bank and its correspondent * * * where the collecting bank is satisfied that it will not need to assume the loss.”
Undoubtedly, the uniform practice is for the collecting bank to reimburse the drawee bank when its depositor consents to being charged, and to refuse such reimbursement when its "depositor does not consent. When a drawee bank is reimbursed the inescapable inference must be that the collecting bank’s depositor has consented to being charged.
Las Vegas responded to Commerce’s request in a spirit of good will and friendly co-operation but on the basis of a mistake of fact or law. As a result, Commerce received a windfall which in fairness it should not be permitted to retain, and which the law does not permit it to retain.
Accordingly, plaintiff’s motion for summary judgment is granted, and the defendant’s motion is denied.