OPINION OF THE COURT
Alan Le Vine, J.
A trial was held without a jury in this action by the plaintiff for the alleged conversion of the sum of $2,095.72 from a bank account maintained by the plaintiff at a branch of defendant’s bank, located at 212-29 Jamaica Avenue, Bellerose, New York.
Testifying for the plaintiff was Ira M. Wallace, the president of Regal Tour, Inc. He testified that as of December 13, 1977, three bank accounts were maintained at the Bellerose branch of defendant bank. They were entitled Bruus and Wallace Travel, Ltd. (hereinafter called Ltd.), B & W Travel, Ltd. ATC (hereinafter called ATC) and Regal Tours, Inc. (hereinafter called Regal). It is undisputed that Wallace only had signing authority on two of the above accounts, namely, Ltd. and Regal. Wallace stated that in the afternoon of December 13, he telephoned defendant bank and directed them to transfer $2,095.72 from the Ltd. account to the ATC account. He said that at 9:00 a.m. on December 14, he went to the bank with a Mrs. Martinez *700 from his office and spoke to a Mrs. Rose at the bank. He wanted to stop or reverse the previous day’s verbal order. Mrs. Rose told him that the previous order had not gone through, but he gave Mrs. Rose a letter, dated December 14, instructing the bank to stop or reverse the prior transaction. This letter was admitted into evidence. On December 14, Wallace drew a check from the Ltd. account to Regal in the sum of $2,095.72 and deposited it on that day, with other checks, in the Regal account. The bank statements of Ltd. and Regal, reflecting the above transactions, were admitted into evidence. A photostat of the reversal by the bank on December 14 was also admitted into evidence. On December 15, the bank, through an officer, issued a memo debiting the Regal account in the sum of $2,095.81, stating that this amount was “transferred in error” on December 14. Wallace testified that he went to the bank on December 15, saw Mrs. Shirley Knowlton of the bank and gave her an original letter of December 15 and a copy of a letter to the bank, dated December 14, both of which are in evidence, relating to his verbal instructions to the bank and protesting the December 15 debit of the Regal account by the bank. He further stated that he had dealt with this branch for about two years and had previously had oral transfers, as the one on December 13. The ATC bank statement, showing the credit to this account on December 13, the debit on December 14 and the credit on December 15 was admitted into evidence.
Doris Martinez testified that she is the bookkeeper for the plaintiff. On December 14, she went to the bank at 9:00 a.m. with Wallace and first made a deposit (to the Regal account, including the disputed amount). Then, she said, she went over to Mrs. Rose, where Wallace was. She further testified that she went to the bank again on December 15 at 2:45 p.m. and gave Wallace’s original December 15 and copy of his December 14 letters to Mrs. Knowlton of the bank. She said that she did not remember if she was with anyone else from her office at the time.
Testifying for defendant was Susan Simonelli. She said that she was employed by defendant as the assistant manager on December 13. She confirmed that Wallace had signing authority on the Regal and Ltd. accounts, but not *701 on the ATC account. Signature cards for the Ltd. and ATC accounts were introduced into evidence. She stated that Wallace called her on December 13 and asked to transfer funds from, the Ltd. account to the ATC account. She identified the December 13 debit memo from the Ltd. account and the December 13 credit memo to the ATC account which were introduced into evidence. The reverse orders of December 14 were likewise admitted in evidence, as were the final orders of December 15, debiting the Regal account and crediting the ATC account.
A careful examination of the law in this matter shows that prior to the adoption of the Uniform Commercial Code, once a check is deposited to and credited to an account of the depositor and charged against the account of the drawer, the check is paid and the transaction is closed. (See Consolidated Nat. Bank of N. Y. v First Nat. Bank of Middletown, 129 App Div 538, affd 199 NY 516.)
With the adoption of the Uniform Commercial Code, a reading of the statutory framework shows how the law now differs from the earlier case law. The appropriate sections of the Uniform Commercial Code are sections 4-212, 4-213 and 4-301.
Section 4-301 of the Uniform Commercial Code deals with the deferred posting rules as follows: “(1) Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subsection (1) of Section 4-213) and before its midnight deadline it (a) returns the item; or (b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.”
Following the above statutory rule, we can see that section 4-213 covers the rules governing final payment. “(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: (a) paid the item in cash; or (b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or *702 agreement; or (c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith”.
Section 4-212 follows the framework by outlining the bank’s right to charge back or obtain a refund: “(3) A depositary bank which is also the payor may charge-back the amount of an item to its customer’s account or obtain refund in accordance with the section governing return of an item by a payor bank for credit on its books (Section 4-301).”
When the foregoing three sections are read together, it is clear that the rule as governed by the Uniform Commercial Code allows a bank to charge back or obtain a refund of a provisional settlement (§ 4-212), as long as final payment (§ 4-213) has not been made (§ 4-301).
In the case at bar it is uncontroverted that the check drawn to Regal was deposited on December 14 and was given final payment on December 15 when the Regal account was credited and the Ltd. account was debited. The next problem to deal with is the factor that the bank was both the depositary and payor bank which is covered by section 4-213 (subd [4], par [b]) of the Uniform Commercial Code.
“(4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right * * *
“(b) in any case where the bank is both a depositary bank and a payor bank and the item is finally paid, — at the opening of the bank’s second banking day following receipt of the item.”
Applying this section to the case at bar would mean that the check deposited into Regal’s account on December 14 would not be available for withdrawal as of right until the opening of business on December 16. According to official comment 11 of section 4-213 of the Uniform Commercial Code, this result would occur even when final payment is made on December 15, which is what occurred in this case. The commentary indicates that this result is desirable “to avoid uncertainty and possible disputes between the bank *703 and its customer as to exactly what hour within the day the credit is available.”
The Court of Appeals defined the charge back rights of a bank which is both the depositary and payor bank in the case of Sunshine v Bankers Trust Co. (34 NY2d 404, 409). “The pertinent code section to determine when the depository bank which is also the payor bank may charge back an account is subdivision (3) of section 4-212. That section allows a bank to obtain a refund for its provisional credit in accordance with subdivision (2) of section 4-301 provided the bank acts within the time limits prescribed by subdivision (1) of section 4-301. Subdivision (1) of section 4-301 states the bank must return the item or give written notice of dishonor ‘before it has made final payment (subsection [1] of Section 4-213) and before its midnight deadline’ or it may not ‘revoke the settlement and recover any payment’ pursuant to that section. The midnight deadline is the banking day following the banking day the bank receives the relevant item (see Uniform Commercial Code, § 4-104, subd. [1], par. [h]). If the item is not returned or dishonored within that time limit, the item becomes available for withdrawal as of right ‘at the opening of the bank’s second banking day following receipt of the item’ (Uniform Commercial Code, §4-213, subd. [4], par. [b]).”
The facts of this case can be distinguished from the Sunshine case since the bank charged back the credit given to Regal within the time limit set by section 4-213 (subd [4], par [b]) of the Uniform Commercial Code.
While the bank’s right to charge back as stated in section 4-212 (subd [4], par [b]) of the Uniform Commercial Code is not affected by the bank’s failure to exercise ordinary care with respect to the item, any bank so failing may remain liable. “Thus charge-back is permitted even where nonpayment results from the depositary bank’s own negligence. Any other rule would result in litigation based upon a claim for wrongful dishonor of other checks of the customer, with potential damages far in excess of the amount of the item. Any other rule would require a bank to determine difficult questions of fact. The customer’s protection is found in the general obligation of good faith (Sections 1-203 and 4-103) *** 6. It is clear that the *704 charge-back does not relieve the bank from any liability for failure to exercise ordinary care in handling the item. The measure of damages for such failure is stated in section 4-103(5).” (Uniform Commercial Code, § 4-212, official comments 5, 6.)
While it is clear that the bank was negligent in failing to discover that Mr. Wallace had no authority to reverse a transaction from the ATC into the Ltd. account, Regal cannot claim that it was hurt by it. If the bank had properly checked its records and discovered that Mr. Wallace had no authority, then the money in question would not have been transferred out of ATC and Regal would have found itself in precisely the same situation it presently is in, namely, $2,095.72 poorer. Ultimately the responsibility must fall upon Mr. Wallace since he should have carefully determined exactly which account he wanted to put the deposit into in the first place, thereby avoiding the disappointing result of finding out that he had no authority to undue his own error.
It is apparent that an old adage which is particularly apropos in this case is “Act in haste, repent in leisure”. Had Mr. Wallace initially taken the care to determine which account he wanted credited he would have spared himself considerable grief.
Accordingly, for the above-mentioned reasons, at the conclusion of the entire case, judgment is rendered in favor of the defendant, without costs.