BANQUE WORMS, Plaintiff,

v.

**BANK AMERICA INTERNATIONAL,
Defendant and Third–Party Plaintiff,**

v.

**SECURITY PACIFIC INTERNATIONAL
BANK, Third–Party Defendant.**

No. 89 Civ. 3067 (RPP).

United States District Court,
S.D. New York.

Dec. 11, 1989.

J. Portis Hicks and Gregg J. Borri, Boulanger Finley & Hicks, New York City, for plaintiff Banque Worms.

Sarah L. Reid, Kelley Drye & Warren, New York City, for third-party defendant Sec. Pacific Intern. Bank.

Steven T. Atkins, Kramer Levin Nessen Kamin & Frankel, New York City, for defendant and third-party plaintiff Bank America Intern.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr.,
District Judge.

This is a motion and a cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. At stake is $1,974,267.97, currently in the possession of plaintiff Banque Worms (BW), a bank organized and existing under the laws of the Republic of France.

### Background

In the early morning hours of April 10, 1989, third party defendant Security Pacific International Bank (SPIB), a federally chartered bank with offices in New York, received two telexes from Spedley Securities Ltd. (Spedley), an Australian company. At 12:36 A.M.,[1] the first telex instructed SPIB to wire transfer $1,974,267.97 to BW through Bank America International (BAI), a federally chartered bank with offices in New York. BW had outstanding a loan to Spedley which it had called. The amount of the wire transfer would have satisfied Spedley's indebtedness to BW. The second telex at 3:37 A.M. instructed SPIB to disregard the first telex and to wire transfer the $1,974,267.97 to National Westminster Bank Australia (NWBA).

At the time of those two telexes, Spedley's account with SPIB only contained approximately $70,000. Then at 8:36 A.M. SPIB received $1,974,267.97 from Spedley to cover a single transfer.

At 11:30 A.M., SPIB transferred by wire $1,974,267.97 (the Funds) to BAI for BW's account. At approximately 1:45 P.M., SPIB informed BAI that the 11:30 A.M. transfer had been a mistake.

At approximately 3:30 P.M., SPIB transferred by wire $1,974,267.97 to NWBA. SPIB's First Vice President approved that transfer to NWBA despite the absence of sufficient cover in Spedley's account because he "expect[ed] that cover would arrive before the close of business on April 10, 1989, as had occurred on previous occasions." Aff. of Robert Manheimer (President and CEO of SPIB) at ¶ 16 (August 4, 1989). *See* Oral Argument at 6–7. No

---

**1.** The time in New York is used throughout this    opinion.

additional cover ever arrived from Spedley and both payments were debited to its account.

Pursuant to an indemnification from SPIB, BAI returned the Funds to SPIB on April 11, 1989. However, BW refused to give BAI debit authorization for the return of the Funds. Accordingly, on April 12, 1989, BAI demanded return of the Funds from SPIB pursuant to the indemnity agreement.

After the Funds were not returned, BW commenced this action by filing a complaint on May 4, 1989 against BAI to recover the $1,974,267.97 plus interest and costs. On May 18, 1989, BAI claimed over against third party defendant SPIB. On June 7, 1989, SPIB asserted a counterclaim against BAI and BW which essentially demands judgment in SPIB's favor for $1,974,267.97 against whichever party is in possession of the Funds at the time of such judgment.

On August 3, 1989, SPIB forwarded the Funds with interest and costs to BAI, who recredited the Funds to BW's account. All claims by and against BAI were then dismissed. The remaining dispute is between SPIB and BW over the $1,974,267.97, currently in the possession of BW. SPIB moves and BW cross-moves for summary judgment.

### Discussion

SPIB contends that permitting BW to keep the Funds would constitute unjust enrichment under New York caselaw's Mistake of Fact Doctrine. Those cases hold that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment

has caused such a change in the position of the other party that it would be unjust to require him to refund. *National bank of Commerce of New York v. National Mechanics Banking Ass'n of New York*, 55 N.Y. 211 (1873). *See Citibank, N.A. v. Warner*, 113 Misc.2d 748, 449 N.Y.S.2d 822 (N.Y.Sup.Ct.1981); *Valley Bank of Nevada v. Bank of Commerce*, 74 Misc.2d 195, 343 N.Y.S.2d 191 (N.Y.Civ.Ct. 1973); *Manufacturers Trust Co. v. Diamond*, 17 Misc.2d 909, 186 N.Y.S.2d 917 (1st Dep't 1959); *Morgan Guaranty Trust Co. v. American Savings and Loan*, 804 F.2d 1487, 1493 (9th Cir.1986) (surveying and applying New York law).

In all of those cases relied upon by SPIB, those parties deemed to have been unjustly enriched did not have a right to the money when the mistaken payment was made. BW relies on that distinction and argues that the Discharge for Value Rule of the Restatement of Restitution is actually the appropriate rule to govern this case because BW, unlike the parties in the cases cited above, was a creditor with a right to the payment from Spedley.[2]

The Discharge for Value Rule states:

### § 14. DISCHARGE FOR VALUE

(1) A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

---

**2.** SPIB argues that BW was not a bona fide creditor entitled to the Funds on April 10, 1989, because Spedley filed for bankruptcy on April 11, 1989. The transfer of funds in Spedley's name by SPIB to Spedley's creditor BW within such a short time of Spedley's declaration of bankruptcy might constitute a voidable preference under Australian law. On the other hand, BW might be entitled to a good faith defense, according to statements of Australian law submitted by BW. This decision does not foreclose SPIB from approaching the liquidator to recover the Funds and causing the issue to be raised in Australian bankruptcy proceedings of wheth-

er the payment on Spedley's behalf to BW constituted a voidable preference. *Morgan Guaranty Trust Co. v. American Savings and Loan, supra,* does not require this Court to hold that BW had no rights as a creditor due to the bankruptcy of Spedley. The court applied the Mistake of Fact Doctrine in *Morgan Guaranty Trust Co.* because the bank receiving the payment had no right to the funds. The court held that the bank was not a bona fide creditor because the debtor was already in bankruptcy at the time of receipt of the payment. In this matter, Spedley had not filed for bankruptcy at the time of the transfer to BW's account at BAI.

Restatement of the Law of Restitution 55 (1937). *See also* 3 G. Palmer, The Law of Restitution 490–91 (1978) ("In situations of endless variety, courts have denied restitution because money paid by one party was received in good faith by the other, in satisfaction or as security for a valid claim against a third person." (footnote omitted)).

There are no allegations of any misrepresentations by either BAI or BW. SPIB contends, however, that BW may have had notice that SPIB was making a mistake by the close of the business day because a SPIB employee contacted BAI concerning the mistake at 1:45 P.M, approximately two hours after the incorrect transfer to BAI. SPIB Br. at 21 (August 4, 1989).

Notice to BAI at 1:45 P.M. would only assist SPIB's position if BW then received notice and if the transaction was not yet complete at 1:45 P.M. SPIB argues that the transfer was not complete at 1:45 P.M. because a wire transfer on the Clearing House Interbank Payments System (CHIPS) is not complete and final until the close of the business day.

SPIB cites no caselaw to support that contention. In *Delbrueck & Co. v. Manufacturers Hanover Trust Co.*, 609 F.2d 1047, 1049–51 (2d Cir.1979), the Second Circuit conducted an extensive examination of the nature of the CHIPS system and held that a CHIPS transaction is irrevocable and final once the transfer takes place. The "final settling of the accounts" at the end of the day is "mere bookkeeping." *Id.* at 1051. Accordingly, any awareness by BW of SPIB's mistake two hours after the funds were transferred by wire is not material.

Although the Discharge for Value Rule, as set forth in the Restatement of Restitution, dictates that the Court permit BW to keep the funds, SPIB argues that the Court should rule otherwise because: (1) the Restatement of Restitution has never been adopted wholesale by the New York courts; (2) New York caselaw requires BW to have relied to its detriment to prevent restitution.

The Restatement of Restitution was adopted in 1937. Although it has never been explicitly incorporated into New York law, the framers of the Restatement in drafting Section 14's Discharge for Value Rule relied upon reasoning in a New York case, *Consolidated National Bank v. First National Bank*, 129 App.Div. 538, 114 N.Y.S. 308 (2d Dept.1908), aff'd, 199 N.Y. 516, 92 N.E. 1081 (1910). *See* W.A. Seavy and A.W. Scott, Notes on Certain Important Sections of Restatement of Restitution 11 (1937).

In that case, Davis & Co. had an account at First National Bank with a balance of $473. Davis & Co. owed Seaman at least $473. In addition, Davis & Co. owed Consolidated National Bank $150. First National initially paid Consolidated National Bank $150 on behalf of Davis & Co. After First National Bank delivered the $150 to Consolidated National Bank, Seaman received a judgment that "all of the moneys with the First National Bank to the credit of Davis & Co. should be paid to Seaman." 114 N.Y.S. at 311. First National then proceeded to pay Seaman $473 from Davis & Co.'s account. That $473 payment to Seaman was a mistake, because there was only $323 in Davis & Co.'s First National account at the time due to the earlier payment to Consolidated National Bank.[3] The New York court reasoned, "[T]he Seaman action could not rightfully reach the $150 of such payment; if the defendant [First National Bank] has paid out the full sum of $473 to Seaman, it has, of course, done so at its peril, and is unfortunately the loser." *Id.* Seaman was a creditor with a right to

---

**3.** First National made the mistake of paying Seaman $150 more than Davis & Co. had in its account because First National had believed incorrectly that it somehow could prevent the $150 payment to Consolidated National from becoming finalized. The court in *Consolidated National Bank* held that the $150 payment was final. Under the current U.C.C. law in New York it might not be final, *Regal Tour Inc. v. European American Bank*, 108 Misc.2d 699, 438 N.Y.S.2d 947, 949 (Civ.Ct. Queens Co.1981); but that does not affect the validity of the court's reasoning that a bank must suffer the consequences of its mistaken payment on a debtor's behalf to a creditor, who is ignorant of the mistake.

the entire $473 and First National had to suffer the consequence of mistakenly paying him $150 more than Davis & Co. had in their account. Accordingly, New York law is reflected in the the Restatement's Discharge for Value Rule and dictates that SPIB suffer the loss for its mistaken payment to Spedley's creditor BW.

Furthermore, contrary to SPIB's contention, contemporary rules of equity in New York courts are consistent with the Discharge for Value Rule. A string of cases holds that restitution is inappropriate when a bank mistakenly pays funds, over a stop payment order, in satisfaction of a debt, unless the payee has notice of the error. *See, e.g., Wells v. Washington Heights Federal Savings and Loan Association,* 63 Misc.2d 424, 312 N.Y.S.2d 236 (N.Y.Civ. Ct.1970); *Commercial Insurance Co. of Newark v. Scalamandre,* 56 Misc.2d 628, 289 N.Y.S.2d 489 (N.Y.Civ.Ct.1967); *Chase National Bank v. Battat,* 105 N.Y.S.2d 13 (N.Y.Sup.Ct.1951); *National Boulevard Bank v. Schwartz,* 175 F.Supp. 74, 76 (1959), aff'd 274 F.2d 823 (2d Cir.1960).

SPIB attempts to distinguish these cases by pointing out that they do not involve CHIPS transactions. The Second Circuit, however, utilizes New York law's "analogous use of concepts" in cases involving checks when deciding the appropriate law for CHIPS transactions. *Delbrueck,* 609 F.2d at 1051. Indeed, in *Delbrueck* the Second Circuit drew an analogy between the "acceptance" of a check under New York law and the finalization of a CHIPS transaction. *Id.* The equitable principles justifying the Discharge for Value Rule, as well as the related rules concerning bona fide purchasers, are just as valid whether the payment is by wire or by check.

SPIB argues that BW must show it relied to its detriment on the mistaken payment to prevent restitution to SPIB. Its authority consists entirely of the cases cited to support its Mistake of Fact Doctrine argument. No case is cited by SPIB in which detrimental reliance was required when the payee was entitled to the funds. Under the Discharge for Value Rule, as stated in the Restatement and in the stop payment cases cited *supra,* a party with a right to the payment need not also manifest detrimental reliance to be allowed to keep the funds.

### Conclusion

As a matter of law, this Court cannot obligate BW to return the Funds to SPIB. Since no genuine issues of material fact exist, the Court grants plaintiff's cross-motion for summary judgment against SPIB and denies SPIB's motion for summary judgment against BW.

SO ORDERED.