*900 OPINION OF THE COURT
Timothy J. Dufficy, J.
A nonjury trial was held in this matter on August 5, 2005. Defendant Ridgewood Savings Bank served a posttrial memorandum of law; plaintiff, Gaspare Chiofalo, served a response to Ridgewood’s memorandum of law; and, upon the court’s direction in a letter to Ridgewood’s counsel with copies to plaintiff and codefendant, Vedwatee Brijlall, dated December 7, 2005, Ridgewood served a supplemental posttrial memorandum of law on December 29, 2005. The issues before the court are whether defendant Ridgewood is liable to its depositor, plaintiff Chiofalo, for negligently accepting from nonparty Chase Manhattan Bank defendant Vedwatee Brijlall’s affidavit of forgery and whether said defendant’s signature was forged.
Defendant Ridgewood’s Contentions
Defendant Ridgewood contends that it was under a duty to refund the money to Chase since an affidavit of forgery was filed and served on Ridgewood. Defendant Brijlall contends that she never received the check, her signature was forged on the check and she never received the proceeds from the check.
Plaintiffs Contentions
Plaintiff contends that he and Mrs. Brijlall indorsed the check in question at Ridgewood Savings Bank in the presence of the bank officer. Plaintiff further contends that his account was improperly debited due to a patently false affidavit of forgery and Ridgewood must credit his account.
Findings of Fact
At the close of trial the court made the following findings of fact:
Plaintiff and codefendant Brijlall are coworkers at Creedmore Psychiatric Center. Over 13 years ago Brijlall requested that Chiofalo assist her in filling out applications for loans from her New York State and Local Retirement System retirement account. Chiofalo agreed to help Brijlall and further agreed to allow her to submit applications whereby New York State would issue checks to Brijlall in care of Chiofalo, which were deposited in Chiofalo’s account at Ridgewood Savings Bank. The parties testified that the purpose of this arrangement was to cash the checks and keep Brijlall’s husband from becoming aware of the withdrawing of funds. Both Chiofalo and Brijlall testified that *901 between 1992 and 2000 one or more checks were issued by the New York State and Local Retirement System to Brijlall. Chiofalo testified that he received gifts from Brijlall in exchange for his assistance. In July 2002 New York State issued check No. 02223626 to Brijlall in care of Chiofalo drawn on an account held by New York State at JP Morgan Chase Bank. This check was cashed at Ridgewood Savings Bank on July 8, 2002. Chiofalo further testified that Brijlall indorsed the check and received the proceeds. Ridgewood Savings Bank offered the testimony of Mr. Jack Dafgard, branch manager. Mr. Dafgard testified that check No. 02223626 bore signatures that purported to be those of Chiofalo and Brijlall. Mr. Dafgard further testified that an employee identification of Brijlall was also supplied since Brijlall was not a Ridgewood Savings Bank customer. At the time plaintiff opened his account at Ridgewood he executed an agreement card, received in evidence by the court at trial, that stated in pertinent part: “We further agree that any indebtedness incurred by either of us to said bank shall be deducted from and charged to this account.” The court found that Brijlall received the proceeds of said check and attempted to commit a fraud or acted in a way to create an injustice for the plaintiff in that two years later, on October 15, 2004, Brijlall submitted an affidavit of forgery to Chase Manhattan Bank swearing that the indorsement on the check was not hers.[1] Despite defendant BrijlalTs claims that she did not sign check No. 02223626, the court, pursuant to its authority (CPLR 4536), compared the signature on said check to the signature on documents admitted in evidence which Mrs. Brijlall admitted to signing including notarized New York State retirement loan applications dated 1993, 1994, 1996, 1999 and 2002. The signature on said applications and check No. 02223626 are one and the same. Therefore, the testimony of Mrs. Brijlall is incredible as a matter of law. Accordingly, there was no forgery. It appears that Mrs. Brijlall made the claim of forgery only when she neared *902 retirement age and realized that her outstanding loans would permanently reduce her pension.
Chase Manhattan Bank thereafter issued a replacement check in December 2004 to Brijlall in the amount of $7,925 which Brijlall returned to the New York State and Local Retirement System in order to replenish her account. Thereafter, Chase made a claim upon Ridgewood Savings Bank for reimbursement pursuant to Uniform Commercial Code § 4-207. Ridgewood, in turn, debited plaintiff Chiofalo’s account in the amount of the replacement check. On the propriety of this action by Ridge-wood the court reserved decision and directed defendant Ridge-wood to submit a memorandum of law, which was submitted, followed by a second such direction in December 2005, which was also met.
Conclusions of Law
According to Ridgewood Savings Bank, it was obligated to make payment to Chase Manhattan Bank upon receiving Brijlall’s affidavit of forgery from that bank (see UCC 4-207 [2]).
UCC 4-207 (2) states in relevant part:
“Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that
“(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
“(b) all signatures are genuine or authorized; and
“(c) the item has not been materially altered; and
“(d) no defense of any party is good against him.”
The breach of the above warranty of prior indorsement is based on strict contractual liability (see Perez v Charter One FSB, 298 AD2d 447, 448 [2d Dept 2002]).
“Thus, a depositary bank (the defendant) is entitled to recover from its customer (the plaintiff) the amounts it was required to pay to a drawee bank for accepting the customer’s deposit of a check bearing a prior forged endorsement, the proceeds of which the depositary bank had furnished to the customer.” (Id. [citation omitted].)
Therefore, according to Ridgewood, once it received notice of *903 the forgery affidavit from Chase Manhattan Bank it was obligated to make payment to Chase and entitled to debit plaintiff Chiofalo’s account for that amount.
Here, however, the subject check did not in fact bear a forged indorsement; the evidently never-investigated allegation of forgery by defendant Brijlall has been discounted by the finding of this court. Secondly, even had there in fact been a forgery, the attempted charge-back of plaintiffs account by defendant Ridge-wood was untimely as a matter of law as it came more than two years after what the court, after trial, further finds was final settlement of the check (UCC 4-212, 4-213, 4-301).
“When the foregoing three sections are read together, it is clear that the rule as governed by the Uniform Commercial Code allows a bank to charge back or obtain a refund of a provisional settlement (§ 4-212), as long as final payment (§ 4-213) has not been made (§ 4-301).” (Regal Tour v European Am. Bank, 108 Misc 2d 699, 702 [Civ Ct, Queens County 1981].)
Having found that there was no forgery in this matter, that the claim of forgery was made by Mrs. Brijlall only when she neared retirement age and realized that her outstanding loans would permanently reduce her pension, the court implicitly finds that final payment was in fact made on the subject check. In turn, the court finds that the charge-back of plaintiffs account was untimely as a matter of law (see 622 W. 113th St. Corp. v Chemical Bank N.Y. Trust Co., 52 Misc 2d 444 [Civ Ct, NY County 1966]).
In its supplemental posttrial memorandum of law, defendant Ridgewood submits with reference to the above case that:
“In dicta the court stated that Chemical Bank had failed to establish that it would be entitled to judgment absent a forgery because it waited six months after final settlement of the check to reverse the transaction. Ridgewood respectfully submits that the dicta of the New York County Civil Court is not binding on this Court and that given the circumstances of this case, Ridgewood acted in a commercially reasonable manner.”
Contrary to being dicta in the case, such finding was in fact critical to the ultimate determination of the case. Judge Edward Greenfield pointed out that were it not for crediting the third-party defendant’s (the drawer of the check) defense and proof of *904 forgery, causing dismissal of the action in chief rather than allowing for the depositary bank to pay out on an obviously forged instrument, the action would have proceeded to a judgment in favor of the depositor of the check against the depositary bank.
The court noted that the invocation of the charge-back procedure by the defendant “came six months after the initial deposit of the check by plaintiff, and long after final settlement of the item” (Chemical Bank, supra at 446 [emphasis supplied]); that “[o]nce a final settlement has taken place, the collecting bank is no longer an agent, but has been credited with ownership of the proceeds of the item, and a debtor-creditor relationship with its customer ensues” (id. [citation omitted]); and that “[t]he bank cannot then unilaterally deduct sums from the amount credited to a depositor.” (Id.)
Similarly, in Boggs v Citizens Bank & Trust Co. of Md. (32 Md App 500, 505, 363 A2d 247, 250 [Ct Spec App 1976]), the court found as follows:
“Patently, in this case, the Prudential [drawer] check had been finally settled and paid long before the intermediate bank called for a refund from the collecting appellee. The fact that the appellee bank acceded to the intermediate bank’s request to refund the $580.80 did not give the appellee bank the right unilaterally to charge back to Mrs. Boggs’ [depositor/ customer] account the amount it had so refunded or to place a ‘hold’ on her account. Any such right terminated when the payor bank made final settlement seven months before. In commenting on s 4-212, Anderson on the Uniform Commercial Code (2d Ed. Vol. 3, 1971) has this to say, at p. 263, s 4-212:10:
“ ‘After final settlement of an item, a customer’s bank changes from an agent for collection to a debtor of the customer, from which it follows that the bank cannot make any refund from the customer’s account to the drawee bank upon the basis that the latter claims that an indorsement was forged.’ ”
The court, in Chemical Bank (supra at 446), went on in that case to note that:
“After final settlement, and the charging of the amount of the check against the drawer’s account, a voluntary refund by the collecting bank is at its own peril, for there are defenses it could interpose to resist payment. . . The mere assertion of a claim to *905 any part of a deposit does not permit a bank on its own to recognize the validity of that claim. (Cf. Banking Law, § 134, subd. 5.)” (Citation omitted.)
And, to the extent that defendant Ridgewood asserts that it was not negligent and acted within a commercially reasonable manner with respect to the subject transaction, the court notes that UCC 4-212 (1) indeed allows a charge-back of a customer’s account “if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts” (emphasis supplied). Arguably this standard would support Ridgewood’s defense except that the section goes on to provide that “[t]hese rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final” (id.). That is what occurred here.
Thus, the court in this matter finds that the charge-back by defendant Ridgewood of plaintiff Chiofalo’s account after the final settlement of check No. 02223626 was improper as a matter of law.
In those instances where the right to charge-back no longer exists due to final payment of the item, such as in this case, “any deduction must come as a result of the common law right of set-off.” (Travalio, Now You Have It, Now You Don’t: The Depositary Bank’s Rights of Charge-Back and Set-Off, 30 Ariz L Rev 719, 743 [1988] [citation omitted].) This article recognizes Chemical Bank (supra) as just such a case although not labeled as such in its text (see Travalio at 742 n 141, 743 nn 145, 146), and concludes (at 743), as occurred in Chemical Bank, that:
“[T]he courts have reached the correct conclusion that the depositary bank cannot unilaterally choose to recognize the claim of forgery of the payor and debit the customer’s account in the absence of proof of forgery. That is, unless the bank can prove a forgery existed, the customer is entitled to have his account recredited, and presumably to be compensated for wrongful dishonor for those checks that bounced as a consequence of the bank’s unjustified debit of the customer’s account.” (Citation omitted.)
Here, even recognizing the pre-UCC common-law right of set-off, a number of factors militate against a finding that defendant Ridgewood was not negligent or acted in a commercially reasonable manner with respect to the subject transaction. In *906 his article (at 744-745), Professor Travalio notes that “[wjhile the Code does not specifically require prior notice with respect to set-off, the structure of the Code certainly suggests the implication of such a requirement within the bank’s obligation of reasonable care.” He continues: “Because a set-off, unlike a typical charge-back, will usually involve an item which has already been paid, the customer probably has a greater expectation that the funds represented by the check are available to him, and, thus, notice is even more important in the set-off context.” (Id. at 745.)
Following its receipt of a letter from Chase dated October 28, 2004 referencing defendant Brijlall’s forged indorsement, Ridge-wood reimbursed Chase’s account by teller’s check dated November 17, 2004, and notified plaintiff Chiofalo by letter on the same date[2] that his account “has been debited” in the amount of the allegedly forged check.[3] Thus, the debiting of plaintiffs account by Ridgewood took place fully 28 months after the original negotiation of the subject check on July 8, 2002, and without prior notice to plaintiff.
Given the extensive, well over two-year passage of time between the final settlement of the subject check and the setoff against plaintiffs account, coupled with the unilateral, but more importantly, incorrect deduction of funds based on Ridgewood’s unquestioning reliance on the payor bank’s (Chase), in turn, unquestioning reliance on a falsified affidavit of forgery, the court finds that defendant Ridgewood acted negligently and not in a commercially reasonable manner with regard to plaintiffs account. It appears that an investigation of the forgery allegation would have revealed the actual nature of what was carried out by defendant Brijlall first to the detriment of the drawer State Retirement Fund and ultimately to the remaining parties to the present litigation.[4]
The court finds that plaintiff did not breach the warranty of presentment to the depositary or collecting bank, Ridgewood (see UCC 4-207), i.e., that defendant Brijlall had good title to *907 the subject check and that the signature indorsed on it by Mrs. Brijlall for deposit into plaintiffs account was in fact genuine; and that defendant Brijlall’s claim of forgery was a subsequent, separate act which did not impair plaintiffs warranty.
As noted earlier,
“[a]fter final settlement, and the charging of the amount of the check against the drawer’s account, a voluntary refund by the collecting bank is at its own peril, for there are defenses it could interpose to resist payment. The mere assertion of a claim to any part of a deposit does not permit a bank on its own to recognize the validity of that claim. (Cf. Banking Law, § 134, subd. 5.)” (Chemical Bank, supra at 446 [citation omitted].)
However, the court, in Chemical Bank, also noted that:
“The final settlement of a deposited item then, while terminating the collecting bank’s right of charge-back in reliance upon a simple notification from the drawee bank, does not in any way preclude the bank from pursuing its remedies by way of plenary suit, in order to hold the depositor on its indorsement and the warranties connected therewith.” (Id. [citation omitted].)
Defendant Ridgewood did not do this, i.e., did not interpose a counterclaim against plaintiff in this action; thus, plaintiff is entitled to judgment. (Id.)
However, Judge Greenfield, by then in state Supreme Court, recognized in a later action (Chemical Bank v Ferst, NYLJ, Jan. 15, 1991, at 21, col 2) that a depositary bank, although no longer in a position to charge-back its customer’s account, could still pursue its remedies by way of a plenary action against the indorser and/or drawer of the check (citing 622 W. 113th St. Corp. v Chemical Bank N.Y. Trust Co., supra). The decision continues (at 21, col 5):
“ ‘Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.’ (National Bank of Commerce v National Mechanics’ Banking Assoc., 55 N.Y. 211, 213; Miller v Schloss, 218 N.Y. 400, 407 [1916]; Liberty Mutual Ins. Co. v. Newman, 92 AD 2d 613 [2nd Dept. 1983]).”
*908 An action for moneys had and received “ lies for money paid by mistake . . . or an undue advantage taken of the plaintiffs situation . . . [T]he gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.” (Friar v Vanguard Holding Corp., 78 AD2d 83, 88 n 2 [1980], quoting Moses v Macferlan, 2 Burr 1005, 1012, 1 Wm B1 219, 97 Eng Rep 676; see also Citibank v Warner, 113 Misc 2d 748, 750.)
Based on the foregoing, plaintiff shall have judgment against defendant Ridgewood and defendant Brijlall, each being severally liable to plaintiff, in the amount of $7,925, together with statutory interest from November 17, 2004, and applicable costs and disbursements of the action. Judgment on the cross claim is granted in favor of Ridgewood over against codefendant Brijlall for the amount recovered against Ridgewood by plaintiff.
The above relief is without prejudice to the institution by defendant Ridgewood of any action against plaintiff Chiofalo, Chase Manhattan or the New York State and Local Retirement System.

. A letter to Mrs. Brijlall from the Bureau of Accounting of the Office of the New York State Comptroller, New York State and Local Retirement System, dated October 4, 2004, contains the following paragraph:
“In accordance with our telephone conversation today, enclosed is an Affadavit [sic] of Forgery of Check Endorsement for you to complete, in order to file a forgery claim for the July 2002 loan check. The amount of time that the bank is liable for paying a forgery claim is three years. Therefore, I am not sending affidavits for the 1999, 1998, 1996 and 1994 loans as these exceed the three year time Emit.”

. Although the letter is dated November 17, 2002, it was agreed and stipulated at trial that the actual intended date was November 17, 2004.

. Plaintiffs response to Ridgewood’s initial memorandum of law notes that the sum of the disputed check was withdrawn from his account on November 17, 2004 pursuant to a Ridgewood Savings Bank debit memo dated November 16, 2004, a copy of which is attached to his response.

. A reading of the circumstances alluded to in the Retirement Fund’s letter to Mrs. Brijlall dated October 4, 2004 (see 901 n 1, supra), alone, is enough to raise suspicion.