**BANQUE WORMS, Plaintiff-Appellee,**

v.

**BANKAMERICA INTERNATIONAL, Defendant–Third–Party Plaintiff,**

**Security Pacific International Bank, Third–Party Defendant–Appellant.**

**No. 1270, Docket 90–7106.**

United States Court of Appeals, Second Circuit.

Argued May 8, 1990.

Decided March 15, 1991.

J. Portis Hicks, New York City (Gregg J. Borri, Boulanger, Finley & Hicks, New York City, of counsel), for plaintiff-appellee.

Sarah L. Reid, New York City (Alan R. Kusinitz, Kelly, Drye & Warren, New York City, of counsel), for third-party defendant-appellant.

Before ALTIMARI and MAHONEY, Circuit Judges, and POLLACK, Senior District Judge.*

ALTIMARI, Circuit Judge:

Third-party defendant-appellant Security Pacific International Bank ("Security Pacific") appeals from a judgment, entered in the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *Judge*), granting plaintiff-appellee Banque Worms' motion for summary judgment. On this appeal, Security Pacific contends that the district court erred by applying the Discharge for Value Rule, set forth at Section 14 of the *Restatement of the Law of Restitution* (1937). For the reasons stated below, we certified this issue to the New York Court of Appeals, which subsequently held that the Discharge for Value rule is applicable to the circumstances of this case. *See Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 568 N.Y.S.2d 541, 570 N.E.2d 189 (1991).

We now affirm the judgment of the district court.

* Hon. Milton Pollack, United States District Court for the Southern District of New York, sitting by

## BACKGROUND

Security Pacific is a federally-chartered banking corporation with offices in New York, New York. Banque Worms is a French bank, organized and existing under the laws of the Republic of France. Spedley Securities, Inc. ("Spedley"), an Australian corporation, maintained a revolving credit agreement with Banque Worms. This agreement was routinely renewed every three months as it fell due. On March 31, 1989, however, Banque Worms sent a telex to Spedley indicating it would not renew the agreement and demanding payment of the outstanding debt on April 10, 1989, the due date.

Spedley had a relationship with Security Pacific, whereby Security Pacific effected wire transfers on Spedley's behalf. Spedley intended to make payment on its debt to Banque Worms by wire transferring funds from Security Pacific to an account maintained by Banque Worms with BankAmerica International ("BankAmerica"), a federally-chartered banking corporation, with offices in New York.

On April 10, 1989, at 12:36 a.m. (eastern daylight time), Spedley sent a telex to Security Pacific instructing it to wire transfer $1,974,267.97 to Banque Worms' BankAmerica account. At 3:37 a.m., Security Pacific received a second telex from Spedley, directing Security Pacific to stop payment to Banque Worms and instead to make payment in the same amount to National Westminster Bank USA ("NatWest USA").

At the time the telexes were received, Spedley had a credit balance with Security Pacific of only $84,500; however, at 8:46 a.m., Security Pacific received $1,974,267.97 to cover the transaction. At 11:30 a.m., in accordance with Spedley's first telex but in contradiction of the second telex, Security Pacific mistakenly wire transferred $1,974,267.97 to BankAmerica, for the account of Banque Worms. BankAmerica was notified, through the Clearing House Interbank Payment System ("CHIPS"), that it had received the funds and credited

designation.

the amount to Banque Worms' account. At 3:42 p.m., Security Pacific, in accordance with Spedley's second telex, transferred $1,974,267.97 to NatWest USA. Spedley's account was debited to record both transactions, leaving it with an overdraft.

Meanwhile, Security Pacific contacted BankAmerica and requested return of the funds paid in error. BankAmerica allowed the funds to be returned, subject to Security Pacific furnishing a United States Council on International Banking, Inc. ("CIB") indemnity. The indemnity was furnished, and the funds were returned to Security Pacific on April 11. In order to account for the return of the funds, BankAmerica debited Banque Worms' account and, subsequently, asked Banque Worms whether it would assent to the debit. On April 12, Banque Worms informed BankAmerica that it would not. Accordingly, BankAmerica requested that Security Pacific perform pursuant to the CIB indemnity and return the funds. In turn, Security Pacific attempted to obtain the funds to cover this indemnity from Spedley. However, by that time Spedley had entered into involuntary liquidation in Australia.

As a result of the foregoing, Banque Worms brought an action, in the United States District Court for the Southern District of New York, seeking to compel BankAmerica to re-credit $1,974,267.97 to Banque Worms' account. BankAmerica brought a third-party complaint against Security Pacific for return of the funds. Security Pacific counterclaimed against Banque Worms seeking a declaratory judgment that neither BankAmerica nor Banque Worms had any entitlement to the $1,974,267.97.

For reasons not relevant to this appeal, Security Pacific eventually returned the funds to BankAmerica, and BankAmerica re-credited Banque Worms' account. BankAmerica was then voluntarily dismissed from the case. The remaining parties to this litigation are Banque Worms and Security Pacific, and both claim entitlement to the $1,974,267.97.

Following BankAmerica's dismissal, Security Pacific moved for summary judg-ment. In support of its motion, Security Pacific argued that New York law provides that money paid under a mistake may be recovered, unless the payment has caused such a change in the position of the receiving party that it would be unjust to require the party to refund. Thus, Security Pacific argued that Banque Worms was not entitled to the mistakenly transferred funds. In response, Banque Worms cross-moved for summary judgment, asserting that this case is governed by the principle set forth in Section 14(1) of the *Restatement of the Law of Restitution*. The Restatement provides:

§ 14 *Discharge for Value*

(1) A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

Banque Worms thus claimed that it is entitled to the mistakenly transferred $1,974,267.97.

District Judge Patterson agreed with Banque Worms and held that the Discharge for Value Rule applied to the present case. Accordingly, the district court denied Security Pacific's motion, granted Banque Worms' cross-motion and entered judgment on behalf of Banque Worms. *See Banque Worms v. BankAmerica Int'l*, 726 F.Supp. 940, 941–43 (S.D.N.Y.1989). This appeal followed.

## DISCUSSION

The sole issue presented by this appeal is whether New York has adopted the *Restatement of the Law of Restitution*'s Discharge for Value rule. Upon thorough consideration, we determined that New York law failed to provide any meaningful guidance on this issue. The lack of clear precedent was evidenced by the fact that both appellant and appellee cited to *Ball v. Shepard*, 202 N.Y. 247, 95 N.E. 719 (1911), as the leading case supporting their con-

trary positions. *Ball v. Shepard* states that:

in order to justify a recovery ..., it must appear that the defendant was not, in the first instance, entitled to receive the money; and [second] that his circumstances have not been so changed through its receipt as to render it unjust to compel him to refund.

*Id.* at 253, 95 N.E. at 722. The first requirement might reasonably be read as an acceptance of principles similar to those set forth in the Discharge for Value rule. *See, e.g., Carlisle v. Norris,* 215 N.Y. 400, 415, 109 N.E. 564, 569 (1915); *Commercial Ins. Co. v. Scalamandre,* 56 Misc.2d 628, 289 N.Y.S.2d 489 (N.Y.Civ.Ct.1967); *see also Banque Worms v. BankAmerica,* 726 F.Supp. at 942–43 (cases cited therein).

However, a number of cases have focused exclusively on the second requirement and indicate that recovery of mistakenly paid monies can be obtained so long as the recipient has not detrimentally relied on the payment. *See, e.g., Hathaway v. County of Delaware,* 185 N.Y. 368, 370–71, 78 N.E. 153, 154 (1906); *Mayer v. Mayor of New York,* 63 N.Y. 455, 457 (1875); *National Bank of Commerce v. Nat'l Mechanics' Banking Ass'n,* 55 N.Y. 211, 213 (1873). Thus, the meaning of *Ball v. Shepard* and related decisions of the New York courts is unclear.

Because of the absence of controlling precedent, we concluded that the question presented by this appeal was appropriate for certification to the New York Court of Appeals. *See* N.Y.Rules of Court § 500.17 (N.Y.Ct.App.) (McKinney rev. ed. 1990); *see also Kidney by Kidney v. Kolmar Laboratories, Inc.,* 808 F.2d 955, 957 (2d Cir.1987). This conclusion was further supported by our recognition that the holding in the present case will undoubtedly have a significant impact on banks and financial institutions operating in New York State and have serious repercussions for New York's banking community. Consequently, "New York has a strong interest in deciding the issue ... rather than having the only precedent on point be that of a federal court." *Alexander & Alexander Services,*

*Inc. v. Lloyds' Syndicate 317,* 902 F.2d 165, 169 (2d Cir.1990).

By order dated May 30, 1990, we certified the following question to the New York Court of Appeals:

Whether in this case, where a concededly mistaken wire transfer by [Security Pacific] was made to [Banque Worms], a creditor of Spedley, New York would apply the "Discharge for Value" rule as set forth at Section 14 of the *Restatement of Restitution* or, in the alternative, whether in this case New York would apply the rule that holds that money paid under a mistake may be recovered, unless the payment has caused such a change in the position of the receiving party that it would be unjust to require the party to refund.

The New York Court of Appeals accepted the certified question for review, *see* 76 N.Y.2d 803, 559 N.Y.S.2d 980, 559 N.E.2d 674 (1990), and issued its decision on February 12, 1991, *see* 77 N.Y.2d at 362, 568 N.Y.S.2d at 541, 570 N.E.2d at 189.

In a thorough and well reasoned opinion, the New York Court of Appeals canvassed the emerging law governing electronic fund transfers and concluded that "the 'discharge for value' rule as set forth at Section 14 of the *Restatement of Restitution,* should be applied in the circumstances in this case." *Id.* at 376, 568 N.Y.S.2d at 550, 570 N.E.2d at 198.

We now turn to the facile task of applying the Discharge for Value rule to the facts of this case. It is undisputed that Security Pacific, acting on behalf of Spedley, mistakenly transferred a $1,974,267.97 payment to Banque Worms. At the time it received the mistaken payment, Banque Worms was Spedley's *bona fide* creditor. Further, Banque Worms made no misrepresentation regarding the transfer or its right to receive the funds and did not have notice of the transferor's error. Therefore, as Judge Patterson concluded, Banque Worms is entitled to retain the mistakenly transferred funds.

## CONCLUSION

We have reviewed appellant's remaining arguments and find them to be without merit. Based on the foregoing, the judgment of the district court is affirmed.