**In re Minnie E. MARTIN.**

**Minnie E. Martin, Plaintiff,**

**v.**

**USDA Rural Housing Service,
Defendant.**

**Bankruptcy No. 99–40150.
Adversary No. 99–4157.**

United States Bankruptcy Court,
N.D. Mississippi.

Jan. 9, 2001.

Ralph M. Dean, William Dye, Oxford, MS, John Tucker, Jackson, MS, for creditors.

John M. Sherman, Clarksdale, MS, for debtor.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint filed by Minnie E. Martin ("debtor"), wherein she seeks to set aside

the prepetition foreclosure sale of her principal residence; a timely answer having been filed by the foreclosing creditor, USDA Rural Housing Service ("Rural Housing Service"); the parties having agreed to submit this matter to the court on stipulated facts followed by memorandum briefs; and the court, having considered same, as well as, an amicus brief filed by the Chapter 13 trustee, finds as follows, to-wit:

## I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## II.

The parties stipulated to the following pertinent facts:

1. The Plaintiff is a Chapter 13 debtor in case number 99–40150, filed on January 11, 1999, in the United States Bankruptcy Court for the Northern District of Mississippi at 2:56 p.m.

2. On March 15, 1994, Minnie Martin borrowed a sum of money from United States of America, acting through the Farmers Home Administration, now known as USDA Rural Housing Service, and granted Farmers Home Administration a deed of trust on Lot 1, Block 4, Rylee Addition to the Town of Tutwiler, Tallahatchie County, Mississippi, Second Judicial District.

3. The deed of trust is recorded in Book 283, Page 578 in the office of the Chancery Clerk of Tallahatchie County, Mississippi, Second Judicial District.

4. USDA Rural Housing Service posted a Notice of Sale on 12/17/98 at the Tallahatchie County Courthouse, Sumner, Mississippi, and published a Notice of Sale in the Sun–Sentinel newspaper on 12/17/98, 12/24/98, 12/31/98, and 1/7/99, pursuant to MCA 89–1–55.

5. The United States of America, acting through USDA Rural Housing Service, foreclosed its deed of trust at 11:30 a.m. on January 11, 1999.

6. USDA Rural Housing Service recorded its Trustee's Deed in Book 308, Page 242, on the 6th day of April, 1999, at 11:56 a.m. in the office of the Chancery Clerk of Tallahatchie County, Mississippi, Second Judicial District.

7. The Substituted Trustee's Deed to USDA Rural Housing Service was not recorded by the date of the filing of the bankruptcy petition on January 11, 1999, at 2:56 p.m. and was subsequently recorded on April 6, 1999, at 11: 56 p.m.

Based on the stipulated facts, the court finds that this bankruptcy case was filed after the foreclosure sale was conducted on the debtor's principal residence, but before the recordation of the trustee's deed. The court has reviewed the pleadings and finds no allegations regarding any technical defects in the foreclosure sale. Accordingly, the threshold issue before the court is whether the debtor retained any legal or equitable interest in the homestead real property at the time she filed her bankruptcy case.

## III.

The filing of a bankruptcy case creates an estate composed of all legal and equitable interests of the debtor in property held as of the commencement of the

case. 11 U.S.C. § 541(a)(1)[1]. Although bankruptcy law creates the estate, non-bankruptcy law determines which assets of the debtor become part of the estate. *Mutual Benefit Life Insurance Company v. Pinetree, Ltd. (In re Pinetree, Ltd.)*, 876 F.2d 34, 36 (5th Cir., 1989). "Bankruptcy law does not create property ..." *Id.* The non-bankruptcy law applicable in this case is that of the State of Mississippi, specifically, two statutes, Miss.Code Ann. § 89-1-59 and § 89-1-43.

Miss.Code Ann. § 89-1-59 is entitled "**Accelerated debt may be reinstated by payment of all default before sale.**" This statute provides that where a series of notes or installment payments are secured by a deed of trust, mortgage, or other lien, and the debt has become accelerated by default or is otherwise due and payable, the debtor, or any interested party, may at any time "before a sale be made under the terms and provisions" of the deed of trust, mortgage, or lien, stop the threatened sale by paying the amount of the note or installments then due or past due with accrued costs, attorney's fees, and trustee's fees. In effect, a debtor may stop a foreclosure sale, before it becomes final, by bringing the debt current. Significantly, the debtor loses the right to "decelerate" the debt once the foreclosure sale has occurred. Mississippi does not recognize the concept often referred to as "equity of redemption," i.e., the right of a party to redeem property from a foreclosure sale *after* the sale has taken place.

The second Mississippi statute pertinent to the matter presently before the court is Miss.Code Ann., § 89-1-43, which, for reference purposes, provides as follows:

**§ 89-1-43. Mortgages and trust estates; Trust estates subject to execution.**

Estates of any kind holden or possessed in trust for another, shall be subject to the like debts and charges of the person to whose use or for whose benefit they are holden or possessed as they would have been subject to them if the person had owned the like interest in the thing holden or possessed as he may own in the uses or trusts thereof, whether the trusts be fully executed or not. Said estates may be sold under execution at law, so as to pass whatever interest the cestui que trust may have; and, before a sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed of trust, except as against the mortgagee and his assigns, or the trustee after breach of the condition of such mortgage or deed of trust.

Miss.Code Ann., § 89-1-43 (1972).

There are three theories used to define the respective legal interests of parties to a mortgage or deed of trust. They are denominated as "title," "lien," and "intermediate." Under the "title" theory, the mortgagee or the trustee is considered to hold actual title to the real property until the underlying debt is paid. Under the "lien" theory, the mortgagor or borrower retains title to the property subject to the lien of the mortgage or deed of trust, which must be executed upon or foreclosed after default. The "intermediate" theory is a hybrid of the two. It provides that a lien is created against the real property by the mortgage or deed of trust, and that title to the real property transfers to the mortgagee or trustee upon default. In

---

1. All further statutory citations are to the United States Bankruptcy Code unless otherwise indicated.

effect, a state adhering to the "intermediate" theory is a "lien" theory state up until the time of default and is a "title" theory state once default occurs. Miss.Code Ann., § 89–1–43, is the fundamental authority indicating that Mississippi is an "intermediate" theory state.

Mississippi's "intermediate" theory status was addressed by the Court of Appeals of Mississippi in *Anderson v. Kimbrough*, 741 So.2d 1041 (Miss.Ct.App.1999). Judge Southwick, writing for the court, found as follows:

> Our conclusion that Mississippi follows the intermediate theory is based on the supreme court's interpretation given to a long-existing statute. For over 100 years a statute has provided that "the mortgagor or grantor shall be deemed the owner of the legal title . . . *except as against the mortgagee . . . after breach of condition of such mortgage,*" Miss. Code Ann § 89–1–43 (Rev.1994) (emphasis added). The supreme court had held that until a breach, the mortgagor has title even against his mortgagee. *Buck v. Payne & Raines*, 52 Miss. 271, 279, 1876 WL 5185 (1876) (on application for reargument); *Wright v. Wright*, 160 Miss. 235, 239, 134 So. 197, 198–99 (1931). After a breach but prior to foreclosure the mortgagee obtains title, but that title can be asserted "only for the protection of his debt, and to make the security available for its payment." *Buck*, 52 Miss. at 279. Even when the mortgagee pursues an "appropriate action" such as ejectment to possess the property, "he still holds it as mortgagee, subject to the equity of redemption, until that has been cut off by a sale." *Id.* Until the foreclosure sale, the mortgagor can regain title by paying the amount due.
>
> . . . .

This intermediate concept has been said to "come closer than the other [title or lien] theories to reflecting what courts do in practice." OSBORNE, REAL ESTATE FINANCE LAW § 4.4 at 123. From this analysis it is evident that the statute leaves title in the mortgagor until "condition broken," but after maturity of the debt and failure to pay, the title shifts to the mortgagee who may foreclose to make those rights secure. Since the mortgagee's rights arise with default, it has been held that even if a mortgagee is holding under an improper foreclosure, it is still entitled because of this statute to possession and the income until the debt is paid. *James v. Jackson Production Credit Ass'n*, 389 So.2d 494, 496–97 (Miss.1980).

*Anderson v. Kimbrough*, 741 So.2d at 1047–1048.

 Under Mississippi law, a grantor under a deed of trust loses title to the encumbered property immediately upon default of the terms of the deed of trust or the underlying promissory note. The subsequent foreclosure is the mechanism by which the trustee procedurally perfects the interest which is automatically transferred upon default. Indeed, the transfer of title to the trustee upon default is not affected even if a subsequent foreclosure sale is set aside due to procedural irregularities.

In *James v. Jackson Production Credit Association*, 389 So.2d 494 (Miss.1980), Jackson Production Credit Association, ("JPCA"), the beneficiary under a deed of trust executed by Thomas L. James, was the successful bidder at a foreclosure sale of the farm land owned by James. A trustee's deed was executed and delivered. Thereafter, JPCA exercised possession and ownership over the land by executing leases and receiving rent payments. In a cause of action filed by James, the trustee's deed was set aside because of irregu-

larities in the foreclosure process. Nevertheless, the chancellor held that JPCA was a "mortgagee in possession," and that it could not be dispossessed of the property until the indebtedness owed by James was paid or until a different party acquired the land pursuant to a valid foreclosure sale. In affirming the chancellor, Justice Lee, writing for the Court, cited Miss.Code Ann. § 89– 1–43 (1972) and quoted an earlier decision:

> "[W]here a mortgagee obtains possession in a suit, or under an irregular or voidable, or void, foreclosure, after breach of the condition of the mortgage, he has a right to hold possession until the mortgage is paid. The mortgagor cannot deprive the possession without paying the debt. . . ."

*James v. Jackson Production Credit Association*, 389 So.2d 494 (Miss.1980) (citing, *Wirtz v. Gordon*, 187 Miss. 866, 184 So. 798 (1938)).

■ Based on the foregoing analysis, the court finds that the debtor herein was divested of legal title to her real property once the underlying loan went into default. Although the exact date of this occurrence was not stipulated by the parties, the default obviously occurred weeks before the foreclosure sale was conducted.

■ As noted above, § 541(a)(1) provides that a bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the date of the bankruptcy filing. Courts in those states which recognize a debtor's right to redeem property following a foreclosure sale have concluded that the "equity of redemption" becomes a property interest of the estate which may be asserted by the trustee or the debtor. *See, In re Hurt*, 158 B.R. 154 (9th Cir. BAP 1993); *Sapphire Investments v. Stewart Title and Trust of Tuc-*

*son (In re Sapphire Investments)*, 19 B.R. 492 (Bankr.D.Ariz.1982); *Bank of the Commonwealth v. Bevan*, 13 B.R. 989 (E.D.Mich.1981); *In re Ivory*, 32 B.R. 788 (Bankr.D.Or.1983). Under Mississippi law, the right of redemption is extinguished upon the sale of the property at foreclosure. Miss.Code Ann. § 89–1–59 (1972); *see also, Peoples Bank and Trust Co. and Bank of Mississippi v. L & T Developers, Inc.*, 434 So.2d 699, 707 (Miss.1983); and *Hart v. Gardner*, 81 Miss. 650, 33 So. 497 (1903). Accordingly, since there were no irregularities in the foreclosure processes, the court finds that the debtor herein possessed no legal or equitable interest in the subject property at the time that her bankruptcy case was filed.

A decision drawing a similar, but not identical, conclusion is *In re Applewhite*, 106 B.R. 468 (Bankr.S.D.Miss.1989).

### IV.

The debtor's arguments in favor of setting aside the foreclosure sale focus, in part, on statute of frauds issues. She cites Miss.Code Ann. § 15–3–1 (1972) for the proposition that any contract for the sale of land must be in writing in order for it to be enforceable. In addition, she cites Miss.Code Ann. § 89–5–3 (1972) for the proposition that all bargains and sales of land are void as to all creditors and subsequent purchasers for valuable consideration without notice unless acknowledged and lodged with the clerk of the chancery court of the proper county.

Because the debtor had already been divested of title upon default and because of the constructive notice conclusion, discussed hereinbelow, the court finds that the debtor's reliance on Mississippi Code Annotated § 15–3–1, § 89–5–3, and any other statute of frauds [2] is without merit.

---

**2.** Miss.Code Ann. § 89–1–3 provides that an

estate of inheritance or freehold, or for a term

The parties to this proceeding placed little emphasis on whether consideration had been given by the successful bidder at the foreclosure sale. Therefore, the court assumes for purposes of discussing this issue that the trustee accepted a "credit bid" from Rural Housing Service. According to *Hubbard v. Massey*, 192 Miss. 95, 4 So.2d 230 (1941), this procedure does equate to the payment of adequate consideration.

## V.

Although not a party to this adversary proceeding, the Chapter 13 trustee petitioned the court for authority to file an amicus brief. Considering that the resolution of this adversary proceeding could have a significant impact on future cases, the trustee's petition was granted.

The trustee acknowledges that § 522(h) of the Bankruptcy Code grants a debtor standing to avoid certain involuntary transfers if the trustee elects not to do so. In her complaint, the debtor is attempting to invoke § 544(a)(3) of the Bankruptcy Code, by way of § 522(h), to avoid the foreclosure of the deed of trust which encumbered her property. For reference purposes, § 544(a)(3) provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge to the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) A bona fide purchaser of real property, other than fixtures from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544.

In essence, this section provides that a transfer of the debtor's real property may be set aside through the use of the trustee's hypothetical avoidance powers if it is not perfected and enforceable against a bona fide purchaser for value at the time that the bankruptcy petition is filed. Citing, *In re Hamilton*, 125 F.3d 292 (5th Cir.1997), the debtor and the trustee assert that this court should first determine whether the statute's hypothetical bona fide purchaser is charged with implied knowledge of the foreclosure sale by either constructive or inquiry notice. If no such notice is imparted, they contend that § 544(a)(3) clearly allows the foreclosure sale to be set aside.

The facts of *In re Hamilton* are analogous to the matter presently before this court. Hamilton, the debtor, filed a Chapter 13 bankruptcy petition three days after a foreclosure sale had taken place on his homestead property, but before the substituted trustee's deed was recorded. Subsequently, Hamilton filed an adversary proceeding seeking to utilize the combination of § 522(h) and § 544(a)(3) to set aside the foreclosure sale. The bankruptcy court revested title to the property in Hamilton and awarded the creditor, Realty Portfolio, Inc., a lien on the property equal in amount to the price paid at the foreclosure sale. The district court affirmed and Realty Portfolio appealed.

The Fifth Circuit had before it two issues. The threshold issue was whether Hamilton could invoke the § 544(a)(3) "strong arm" powers traditionally reserved for the trustee. After citing authorities

of more than one year, in lands shall not be conveyed from one to another unless the con-

veyance be declared by writing signed and delivered.

which traditionally permitted a debtor to exercise the trustee's avoidance powers, the court noted that bankruptcy courts have more recently tended to recede from this view. Nevertheless, the Fifth Circuit specifically concluded that § 522(h) provides a narrow avenue allowing a debtor to utilize § 544(a)(3) to avoid a foreclosure sale.

The Fifth Circuit then noted that § 544(a)(3) permits the avoidance of a transfer of real property that is not perfected and enforceable against a bona fide purchaser at the time the bankruptcy case is filed. *Hamilton* at 298. The court held, however, that bona fide purchaser status is a matter of state law. *Id., citing, Mutual Benefit Life Insurance Company v. Pinetree, Ltd. (In re Pinetree Ltd.),* 876 F.2d 34, 36 (5th Cir.1989). Considering the definition of "bona fide purchaser" under Texas law, the court found as follows:

> Under Texas law, a hypothetical purchaser would gain good title to Hamilton's property after it was sold at a valid foreclosure sale but before the substituted trustee's deed was recorded, unless the purchaser had notice of the foreclosure purchase. See, Tex.Prop.Code Ann. § 13.001(a). Under § 544, the actual knowledge of the trustee is not relevant. 11 U.S.C. § 544(a). The issue is, therefore, whether a hypothetical purchaser would be charged with implied knowledge of the foreclosure by constructive or inquiry notice.

*Hamilton,* 125 F.3d at 299.

After examining the requirements for constructive notice and inquiry notice under Texas law, the Fifth Circuit reversed and remanded the proceeding to the bankruptcy court for a determination of whether "a reasonably diligent inquiry into the recorded deed of trust in the purchaser's chain of title and exercise of the means of information at hand on the date of the bankruptcy filing would have disclosed facts sufficient to place a hypothetical purchaser of the Hamilton property on notice of the foreclosure sale and substitute trustee's deed." *Hamilton,* 125 F.3d at 302–303.

■■■■ In the proceeding before this court, the Chapter 13 trustee argues that § 544(a)(3) grants to a trustee the position of a bona fide purchaser without notice of *any* prior sales, transfers, or existing infirmities. This court disagrees. The hypothetical bona fide purchaser status granted by § 544(a)(3) contemplates that a trustee shall be deemed to have the same knowledge that would be gleaned from conducting an examination of the title to the subject property as of the date of the filing of the bankruptcy petition. *In re Robertson,* 203 F.3d 855, 864 (5th Cir.2000). "The statutory language, 'without regard to any knowledge of the trustee or of any creditor' refers to actual knowledge and does not affect state laws relating to constructive notice." *Id.* This construction of the statute by the Fifth Circuit is significant.

In *Credit Lyonnais New York Branch v. Koval,* 745 So.2d 837 (Miss.1999), the Mississippi Supreme Court had occasion to examine the parameters of notice under state law. Although the facts of the case are distinguishable, the Court reviewed the applicability of the concepts of constructive and inquiry notice to a purchaser of land, and held as follows:

> This Court has held that a purchaser of land is on notice as to facts which would be disclosed upon diligent investigation, if there is "any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title." *Simmons v. Mississippi Transp. Comm'n,* 717 So.2d 300, 303 (Miss.1998) (quoting *Bedford v. Kravis,* 622 So.2d 291, 295 (Miss.1993)) (quoting *Florida Gas Exploration Co. v. Searcy,* 385

So.2d 1293, 1296 (Miss.1980)) (quoting *Dead River Fishing & Hunting Club v. Stovall,* 147 Miss. 385, 395–96, 113 So. 336, 337–38 (1927)). *See also Mills v. Damson Oil Corp.,* 686 F.2d 1096, 1101–02 (5th Cir.1982) (citing *Baldwin v. Anderson,* 103 Miss. 462, 60 So. 578 (1913); *Bowen v. Thornton,* 227 Miss. 562, 86 So.2d 505 (1956)) (holding that, under Mississippi law, a purchaser is a bona fide purchaser for value without notice, unless there is actual notice or circumstances which would put a purchaser on inquiry notice); *Johnson v. Carter,* 193 Miss. 781, 11 So.2d 196 (1943).

In *Board of Educ. v. Hudson,* 585 So.2d 683, 687 (Miss.1991), it was held that a lessee of sixteenth section land was not a bona fide purchaser for value without notice where the lease price, paid by his predecessor in interest, was unconscionably inadequate. "[W]hatever is enough to excite attention or put a party on inquiry, is notice of everything to which such attention or inquiry might reasonably lead." *Id.* (quoting *Baldwin v. Anderson,* 103 Miss. 462, 60 So. 578 (1913)). This Court has further stated that:

> ... the rule is that "when, in respect to a matter in which [one] has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed." ...

*Credit Lyonnais New York Branch v. Koval,* 745 So.2d 837, 842 (Miss.1999).

■■■■ Under Mississippi law, "any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of title" places that individual "on notice as to facts which would be disclosed upon diligent investigation ...". *Simmons v. Mississippi Transportation Commission, supra; Credit Lyonnais New York Branch v. Koval, supra.* In the stipulation of facts, the parties admit that Rural Housing Service posted a notice of sale on December 17, 1998, at the Tallahatchie County Courthouse, Sumner, Mississippi, and published a notice of sale in the local newspaper as required by Miss.Code Ann., § 89-1-55. The purpose for requiring the posting and the publication of the notice of the foreclosure sale is not only to notify the mortgagor that the lands are to be sold, but also to "notify the public" of the sale to insure that a fair price will be realized. *Seal v. Anderson,* 235 Miss. 249, 108 So.2d 864, 866 (1959); *Griffin v. Land,* 214 Miss. 557, 59 So.2d 290, 293 (1952).

■■■■ The debtor admits that a reasonably diligent inquiry would have revealed the recordation of the deed of trust, as well as, the notice of foreclosure sale posted at the courthouse. However, the debtor contends that notice of the actual foreclosure sale would not be revealed. This court disagrees. The recorded deed of trust constitutes "any recital" sufficient to excite a reasonably prudent person to conduct further diligent investigation. No reasonable or prudent person would purchase a parcel of real property, knowing that an unsatisfied deed of trust was outstanding in the chain of title, without verifying the status of the deed of trust. Accordingly, the court finds that while the debtor has properly invoked this avoidance action pursuant to § 522(h), the § 544(a)(3) cause of action must fail because the hypothetical bona fide purchaser would have had constructive notice, pursuant to Mississippi law, of the status of the

deed of trust which would necessarily include the foreclosure sale.

## VI.

 Another statute that was not discussed by the parties is § 1322(c)(1) of the Bankruptcy Code, which provides as follows:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

This court is of the opinion that the debtor cannot avail herself of this particular section because the foreclosure sale was conducted in accordance with applicable nonbankruptcy law prior to the bankruptcy petition being filed. Decisions reaching a similar conclusion are *In re Danaskos,* 254 B.R. 416 (Bankr.N.D.Ill. 2000); *In re Cook,* 253 B.R. 249 (Bankr. E.D.Ark.2000); *In re Bland,* 252 B.R. 133 (Bankr.W.D.Tenn.2000); and *In re Bobo,* 246 B.R. 453 (Bankr.D.C.2000).

## VII.

Pursuant to the analysis set forth hereinabove, the court concludes that the debtor's complaint is not well taken and should be dismissed. An order will be entered accordingly.